UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SCOTT IAN RICHARDSON,       *Plaintiff*, | ) ) ) | |
| *vs*. | ) ) | 1:12-cv-00631-JMS-TAB |
| THE KOCH LAW FIRM, P.C.,       *Defendant.* | ) ) ) | |

## ORDER

Presently before the Court in this action brought under the Fair Debt Collection Practices Act ("FDCPA") is Defendant The Koch Law Firm, P.C.'s ("the Law Firm") Motion to Dismiss, [dkt. 9]. For the following reasons, the Court dismisses this action for lack of subject-matter jurisdiction and denies the Law Firm's motion as moot.

## I.
### BACKGROUND

**A. Judgment in the State Court Lawsuit and Mr. Richardson's Chapter 7 Bankruptcy**

In 1988, Mr. Richardson incurred a debt to Indiana University for "personal educational purposes." [Dkt. 1 at 1, ¶ 6.] In May 1998, the Trustees of Indiana University ("the Trustees") filed a lawsuit against Mr. Richardson in Monroe Circuit Court to collect the 1988 debt, Case No. 53C04-9805-CP-00733 ("the State Court Lawsuit"). [*Id.* at 2, ¶ 7; *see also* dkt. 10-1 at 1.]

On September 1, 2000, Mr. Richardson filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana, Case No. 00-10506-JKC-7 ("the Chapter 7 Bankruptcy"). [Dkt. 1 at 2, ¶ 9; *see also* dkt. 10-2 at 1.] On September 7, 2000, while the Chapter 7 Bankruptcy was pending, a bench trial was held in the State Court Lawsuit, which Mr. Richardson did not attend. [Dkt. 1 at 2, ¶ 10.] On September 12,

2000, judgment was entered in the State Court Lawsuit in favor of the Trustees in the amount of $547.72, with prejudgment interest of $523.74, attorneys' fees of $502.72, and court costs. [Dkt. 10-1 at 2.] The Chapter 7 Bankruptcy was discharged on May 3, 2001. [Dkt. 10-2 at 1.]

### B. Supplemental Proceedings in the State Court Lawsuit and Mr. Richardson's Chapter 13 Bankruptcy

On June 14, 2001, after the Chapter 7 Bankruptcy was discharged, the Trustees filed a Verified Motion in Proceedings Supplemental to attempt to collect the judgment. [Dkt. 10-1 at 2.] On August 30, 2001, Mr. Richardson moved to dismiss the proceedings supplemental, which the state court granted, and moved to set aside the default judgment the next day. [*Id.*] The state court set the Motion to Set Aside Default Judgment for hearing on November 1, 2001 and, when Mr. Richardson failed to appear at the hearing, the state court denied the motion. [*Id.*] The Trustees filed additional Verified Motions in Proceedings Supplemental on November 8, 2001 and December 17, 2001, but both were dismissed because the Trustees were unable to provide a current address for Mr. Richardson. [Dkt. 10-1 at 3.]

Meanwhile, on January 29, 2002, Mr. Richardson filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Indiana, Case No. 02-01381-AJM-13 ("the Chapter 13 Bankruptcy"). [Dkt. 10-3 at 1.] No substantive activity in the State Court Lawsuit took place until after the Chapter 13 Bankruptcy was discharged on April 10, 2007. [*Id.* at 7; dkt. 10-1 at 3.] On April 20, 2007 and May 1, 2007, after the Chapter 13 discharge, the Trustees filed Verified Motions in Proceedings Supplemental in the still pending State Court Lawsuit. [Dkt. 10-1 at 4.] Mr. Richardson filed a Motion to Dismiss Proceedings Supplemental on May 9, 2007, the Court dismissed the Trustees' pending motions, and the Trustees again filed a Verified Motion in Proceedings Supplemental on May 22, 2007. [*Id.*] That motion was followed by a Motion for Writ of Attachment on September 7, 2007, which the

Court issued on September 24, 2007. [*Id.*] On December 6, 2007, Mr. Richardson filed an Emergency Motion to Recall Writ of Attachment and Request for Sanctions and, at a March 13, 2008 hearing on the Motion, indicated that he would be filing a motion to set aside the judgment. [*Id.* at 4-5.] Mr. Richardson never filed the motion to set aside the judgment, and failed to appear at two subsequent hearings regarding further proceedings supplemental. [*Id.* at 5.]

After various additional proceedings supplemental, which did not progress because the Trustees were unable to provide a current address for Mr. Richardson and, consequently, properly serve him with the proceedings supplemental, the Trustees filed the most recent Verified Motion for Proceedings Supplemental on March 29, 2011. [*Id.* at 6.] The Trustees served Mr. Richardson with the Motion, and the state court set a hearing for May 10, 2011. [*Id.* at 7.] When Mr. Richardson failed to appear at the hearing, the state court issued a show cause order and set it for hearing on July 5, 2011. [*Id.*] Mr. Richardson failed to appear at that hearing and the state court issued an Order Renewing Judgment and a Writ of Attachment. [*Id.*]

### C. Mr. Richardson's Complaint

On May 10, 2012, Mr. Richardson filed a Complaint against the Law Firm alleging that it violated the FDCPA through its representation of the Trustees in its efforts to collect the state court judgment. [Dkt. 1.] Mr. Richardson alleges that the state court judgment was "void because it was entered in violation of the automatic stay imposed by 11 U.S.C. § 362(a)," [*id.* at 2, ¶ 12], and that, despite knowing it was void, the Law Firm "ha[s] attempted, on numerous occasions and over many years, to collect on the void judgment," [*id.* at 2, ¶ 14].

Mr. Richardson omits any specific reference to the Trustees' efforts to collect the judgment through proceedings supplemental prior to 2011, focusing only on the Trustees' May 10, 2011 request for a show cause hearing (which was a hearing on the Trustees' March 29, 2011

Motion for Proceedings Supplemental, and took place exactly one year to the day[1] before Mr. Richardson filed his Complaint here), and its July 5, 2011 request for a Writ of Attachment. [*Id.* at 2, ¶¶ 15-17.] Mr. Richardson alleges violations of Sections 1692e and 1692f of the FDCPA, and seeks actual and statutory damages, costs, and attorneys' fees. [*Id.* at 3, ¶¶ 20-21.]

## II.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544, 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951). Factual allegations must plausibly state an entitlement to relief "to a degree that rises 'above the speculative level.'" *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citation omitted). This plausibility determination is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

"[A] district court can 'take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.'… Federal courts can

---

[1] The statute of limitations for an FDCPA claim is "one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

take judicial notice of the decisions of both federal and non-federal courts." *Matthews v. Capital One Bank*, 2008 U.S. Dist. LEXIS 90157, *6-7 (S.D. Ind. 2008) (taking judicial notice of state court docket sheet relating to collection lawsuit against FDCPA plaintiffs).

### III.
#### DISCUSSION

A federal court always has a responsibility to ensure that it has jurisdiction. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). The Court takes this responsibility seriously, and "is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, 'inquire into the facts as they really exist' [; t]he prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met." *Page v. Wright*, 116 F.2d 449, 451 (7th Cir. 1940) (citations omitted). Subject-matter jurisdiction "always comes ahead of the merits." *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007).

### A. The Court's Orders to Show Cause

On October 15, 2012, the Court issued an Order to Show Cause regarding whether it has subject-matter jurisdiction over this matter. [Dkt. 14.] Specifically, the Court noted that it had reviewed the docket in the Chapter 7 Bankruptcy to determine the current status of that case, and found that it had been re-opened on May 15, 2012 and remained so. [*Id.* at 1.] The docket also indicated that Mr. Richardson had not disclosed the claims he asserts in this case to the Bankruptcy Court in the Chapter 7 Bankruptcy since that case was re-opened. [*Id.* at 1-2.] The Court ordered that, since failure to disclose claims in a bankruptcy may result in the debtor losing standing to pursue those claims, the parties were to show cause why the Court should not dismiss

this case based on Mr. Richardson's lack of standing to pursue his claims and, consequently, this Court's lack of subject-matter jurisdiction. [*Id.* at 2-3.]

The parties responded separately to the Court's Order To Show Cause. [Dkts. 15; 16.] Mr. Richardson argued that the Court has subject-matter jurisdiction over this matter because: (1) the issue is not one of standing, but rather whether he is the real party in interest, [dkt. 16 at 1-2, n.1]; (2) the claims he asserts herein did not accrue until "Defendant's actions in 2011," [*id.* at 3]; (3) because the claims accrued after the date he filed his petition in the Chapter 7 Bankruptcy, the claims are not part of the bankruptcy estate, [*id.*]; and (4) the fact that the Chapter 7 Bankruptcy has recently been re-opened does not change the claims' status as being outside the bankruptcy estate, [*id.*].

The Law Firm argued that: (1) the claims Mr. Richardson asserts here accrued when the Law Firm first took action to collect the judgment on June 14, 2001, and became part of the bankruptcy estate when Mr. Richardson filed the Chapter 13 Bankruptcy petition in 2002, [dkt. 15 at 2-3]; (2) the records in the Chapter 7 Bankruptcy and the Chapter 13 Bankruptcy do not reflect that the claims here were ever disclosed, and the trustees did not abandon the claims, [*id.* at 3]; (3) failure to disclose the claims in the Chapter 13 Bankruptcy means that Mr. Richardson has no standing to sue here, [*id.*]; and (4) even if Mr. Richardson has standing, judicial estoppel bars his claims, [*id.* at 3-4].

Because the parties' responses to the first Order to Show Cause raised more issues than they resolved, and since the Court believed that the *Rooker-Feldman* doctrine might apply to bar the Court's exercise of subject-matter jurisdiction in this case, the Court issued a Second Order to Show Cause on November 1, 2012, [dkt. 17]. The Court instructed Mr. Richardson to address the effect of his alleged failure to disclose the claims he asserts here in the Chapter 13 Bankrupt-

cy, and both parties to address the potential effect of the *Rooker-Feldman* doctrine on the Court's subject-matter jurisdiction. [*Id.* at 3.]

Mr. Richardson responded to the Second Order to Show Cause by arguing that it could not have disclosed the claims it asserts herein because they did not accrue until the Law Firm's actions in 2011 and the Chapter 13 Bankruptcy concluded in 2007. [Dkt. 19 at 1.] He also argued that the *Rooker-Feldman* doctrine does not apply here because "[a]lthough it is generally true that the *Rooker-Feldman* doctrine prohibits a federal court from reviewing the validity of a state court judgment, there is an exception where the question is whether a state court judgment was issued in violation of a Bankruptcy Court's automatic stay." [*Id.* at 3.]

The Law Firm argued in response to the Second Order to Show Cause that the *Rooker-Feldman* doctrine bars the Court from exercising subject-matter jurisdiction because the FDCPA claim "arises from and is caused by the September 12, 2000 state court judgment," [dkt. 18 at 4], "without the purportedly void judgment, there would be no alleged FDCPA violation," [*id.* at 5], the collection efforts Mr. Richardson complains of are "clearly 'inextricably intertwined' with the September 12, 2000 judgment…as the Law Firm did exactly what the state court judgment allowed it to do," [*id.* at 6-7], the Court must "necessarily engage in reviewing and assessing whether the underlying September 12, 2000 judgment was properly entered by the state court," [*id.* at 7], and Mr. Richardson "had ample opportunity to raise the FDCPA claim in state court," [*id.* at 8].

### B. Application of the *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine gets its name from two decisions of the United States Supreme Court – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed.

2d 206 (1983). The Court must consider the applicability of the *Rooker-Feldman* doctrine before considering any other affirmative defenses. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). If the *Rooker-Feldman* doctrine applies, the Court must dismiss the suit for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), *Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004), without considering any other defenses, *Taylor v. Fannie Mae*, 374 F.3d 529, 535 (7th Cir. 2004).

The *Rooker-Feldman* doctrine prohibits federal jurisdiction over claims seeking review of state court judgments "no matter how erroneous or unconstitutional the state court judgment may be." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citation omitted). Application of the doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *Kelley*, 548 F.3d at 603. In short, the doctrine prevents a party from effectively trying to appeal a state court decision to a federal district court. *Hukic*, 588 F.3d at 431.

To determine whether *Rooker-Feldman* applies, the fundamental question is whether the injury alleged by the federal plaintiff resulted from the state-court judgment itself or is distinct from that judgment. *Garry*, 82 F.3d at 1365. If the injury alleged resulted from the state court judgment itself, the district court lacks jurisdiction. *Id.* The *Rooker-Feldman* doctrine applies not only to claims that were actually raised before the state court, but also to claims that are "inextricably intertwined" with determinations made by the state court. *Kelley*, 548 F.3d at 603. Although the Seventh Circuit has recognized that the term "inextricably intertwined" is "a somewhat metaphysical concept," the "crucial point is whether the district court is in essence

being called upon to review the state-court decision." *Taylor*, 374 F.3d at 533 (citation omitted). That determination "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.* If a court determines that a claim is inextricably intertwined with the state court judgment, the *Rooker-Feldman* doctrine still only applies if the plaintiff had a reasonable opportunity to raise the issues in the state court proceeding. *Taylor*, 374 F.3d at 533.

Mr. Richardson does not argue that his FDCPA claims do not turn on a determination of the correctness of the state court judgment, nor does he argue that his FDCPA claims are not inextricably intertwined with the state court judgment. The Court will discuss those issues, however, because they are integral to its decision.

When FDCPA claims relate to activity in state court, the claims will not be barred by the *Rooker-Feldman* doctrine where determination of the FDCPA claims does not depend on the propriety of the state court's actions. *See, e.g., Weldon v. Asset Acceptance, LLC*, 2011 U.S. Dist. LEXIS 26185, * 8 (S.D. Ind. 2011) (FDCPA claims based on defendant's lawsuit to collect time-barred debt not barred by *Rooker-Feldman* doctrine where initiation of the state court lawsuit provided the basis for plaintiff's FDCPA claims, and not nature of state court's decision in that lawsuit; "the legitimacy of the collection efforts under the FDCPA is not dependent on the validity of the underlying debt").

When, however, the success of FDCPA claims requires evaluation of a state court judgment, and the FDCPA claims can only succeed if the federal court concludes that the state acted erroneously, courts in this District and the Seventh Circuit Court of Appeals have held that the *Rooker-Feldman* doctrine bars the exercise of subject-matter jurisdiction. *See, e.g., Kelley*, 548

F.3d at 605 (FDCPA claim relating to defendant's pursuit (and eventual award) of attorneys' fees in state court lawsuit, which plaintiffs alleged it did not have the right to, barred by *Rooker-Feldman* doctrine since, "[b]ecause defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgments[; w]e could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees"); *Stefanski v. McDermott*, 2009 U.S. Dist. LEXIS 12379, *11-12 (N.D. Ind. 2009) ("it is clear from the complaint that [plaintiff] is alleging violations of the FDCPA based on [defendant's] attempts to collect costs and attorney fees that he claims were not legally due but that were awarded by the state court's judgment against him.  'The problem with such a theory is that the plaintiff asserts that defendant 'violated the federal law by seeking exactly what the state court awarded'") (citation omitted); *Bullock v. Credit Bureau of Greater Indianapolis*, 272 F.Supp.2d 780, 783 (S.D. Ind. 2003) (*Rooker-Feldman* doctrine barred FDCPA claims relating to efforts to collect state court judgment that awarded treble damages because "the state court determined that the amounts sought were in fact legally due[; t]he state court might have been right and it might have been wrong under Indiana law[, b]ut this court could not rule in plaintiffs' favor without holding that the state court erred"); *Witt v. Westfield Acceptance Corp.*, 2002 U.S. Dist. LEXIS 7821, *10-11 (S.D. Ind. 2002) (FDCPA claims relating to defendant's request for, and later award of, treble damages in state court lawsuit barred by *Rooker-Feldman* doctrine where the FDCPA violation "is not independent of the state court judgment, and it obviously could not have occurred until after the state court entered its judgment….[I]t was the entry of the allegedly erroneous judgment that caused her alleged injuries, and she could not prevail upon her only timely claim without showing that the state court

erred"); *Brown v. Pollard*, 2000 U.S. Dist. LEXIS 18934, *10 (S.D. Ind. 2000) (FDCPA claims based on unlicensed attorney's representation of plaintiff's creditor in state court lawsuit barred by *Rooker-Feldman* doctrine where plaintiff "could prevail on her FDCPA claim only by showing that actions taken in state court and with the approval of the state court violated state law").

Here, the very basis for Mr. Richardson's FDCPA claims is that the Law Firm's efforts to collect the state court judgment violated the FDCPA precisely because the state court judgment was void due to Mr. Richardson's pending Chapter 7 Bankruptcy. His FDCPA claims are inextricably intertwined with the state court judgment, and there is simply no way for the Court to decide whether the Law Firm has violated the FDCPA without deciding whether the state court judgment was void. This is confirmed by the fact that the Law Firm's briefs in support of its Motion to Dismiss, and Mr. Richardson's response, focus heavily on whether the state court judgment was void. [*See* dkts. 10 at 10-13; 12 at 4-8; 13 at 5-8.]

Significantly, as noted above, Mr. Richardson does not argue that his FDCPA claims are not inextricably intertwined with the state court judgment, or that he was not able to bring his claims in the state court proceeding.[2] Instead, his sole argument is that there is an exception to the application of the *Rooker-Feldman* doctrine "where the question is whether a state court judgment was issued in violation of a Bankruptcy Court's automatic stay." [Dkt. 19 at 3.] The cases Mr. Richardson cites in support of this "bankruptcy exception," however, do not stand for

---

[2] Mr. Richardson had many opportunities to attack the validity of the state court judgment during the state court litigation. Indeed, he started the process of objecting to the state court judgment several times, but never followed it to conclusion. For example, he filed a Motion to Set Aside Default Judgment on August 31, 2001, but failed to appear at a hearing on the motion so the motion was denied. [Dkt. 10-1 at 2.] On December 6, 2007, Mr. Richardson filed an Emergency Motion to Recall Writ of Attachment and Request for Sanctions, and indicated at a hearing on the motion that he would be filing a motion to set aside the judgment, which he never did. [*Id.* at 4-5.] Mr. Richardson also could have joined the Law Firm as a defendant and asserted his FDCPA claims in the state court lawsuit, which he never did.

his broad proposition and are limited to cases pending in bankruptcy courts that issued the very stays that the plaintiffs claimed were violated when the state court judgments were entered.[3] Instead, in those cases the bankruptcy courts' power to hear those claims came from the fact that "[t]he bankruptcy court from which the automatic stay originated…has the final say" regarding the validity of the stay. *In re Mid-City Parking, Inc.*, 332 B.R. 798 (Bankr. N.D. Ill. 2005) (rejecting application of *Rooker-Feldman* doctrine to debtor's claims for attorneys' fees incurred in obtaining dismissal of state court case which allegedly violated automatic stay, where fee claims were brought in bankruptcy court where stay originated). *See also In re Benalcazar*, 283 B.R. 514 (Bankr. N.D. Ill. 2002) (motion filed in bankruptcy court relating to defendant's efforts (allegedly in violation of automatic stay, but implicitly approved by state court) to collect state court judgment could be decided by bankruptcy court even in light of *Rooker-Feldman* doctrine because "'[i]f a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause….'") (citation omitted); *In re Angelo*, 2012 Bankr. LEXIS 4499 (Bankr. D. Mass. 2012) (*Rooker-Feldman* doctrine did not bar bankruptcy court from determining whether state court's entry of judgment violated automatic stay, even where state court had already determined that it did not, because "when faced with a collateral challenge to a state court determination that the stay does not apply, the bankruptcy court having jurisdiction over a bankruptcy case in which the stay arises must adjudicate the question anew").

---

[3] The Court notes a certain irony in the fact that Mr. Richardson attempts to rely on a "bankruptcy exception" to the *Rooker-Feldman* doctrine, yet still fails to alert the Bankruptcy Court in his Chapter 7 or Chapter 13 Bankruptcies to the existence of his FDCPA claims in this lawsuit.

Here, this Court did not impose the bankruptcy stay.[4] The "bankruptcy exception" Mr. Richardson points to is inapplicable in this context, and does not save Mr. Richardson's claims – which this Court cannot adjudicate without ruling on the validity of the state court judgment. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) ("the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment"). Accordingly, the Court does not have subject-matter jurisdiction over this matter.[5]

---

[4] Mr. Richardson has filed a separate lawsuit in the Bankruptcy Court against the Trustees, alleging that the Trustees violated the stay by seeking and obtaining the state court judgment. [Dkt. 1 in *Richardson v. Trustees of Indiana Univ.*, Case No. 12-50165 (Bankr. S.D. Ind.).] That is precisely the type of lawsuit that is not barred by the *Rooker-Feldman* doctrine under the cases Mr. Richardson cites.

[5] Because the Court finds that the *Rooker-Feldman* doctrine bars Mr. Richardson from bringing his FDCPA claims in this Court, the Court has not addressed the other issues noted in the Show Cause Orders – namely, whether Mr. Richardson's failure to disclose the claims in either the Chapter 7 Bankruptcy or the Chapter 13 Bankruptcy result in a lack of subject-matter jurisdiction. The Court notes, however, that even if Mr. Richardson's FDCPA claims are properly limited to the Law Firm's activities from May 10, 2011 forward (which the Court finds suspect, given that the May 10, 2011 hearing (which took place a year to the day before the filing of this lawsuit) which Mr. Richardson claims is the earliest act by the Law Firm he complains of, was a hearing on a motion the Law Firm filed March 29, 2011 (which is outside the FDCPA's one-year statute of limitations)), the fact that Mr. Richardson has not disclosed those claims in his reopened Chapter 7 Bankruptcy may provide additional grounds for dismissal based on a lack of subject-matter jurisdiction and the doctrine of judicial estoppel.

- 13 -

## IV.
### Conclusion

For the foregoing reasons, the Court concludes that it does not have subject-matter jurisdiction over this matter. Accordingly, the Law Firm's Motion to Dismiss Plaintiff's Complaint, [dkt. 9], is **DENIED AS MOOT**, and this action is **DISMISSED WITHOUT PREJUDICE**.[6]

11/26/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com

Ohn Park
RUBERRY STALMACK & GARVEY LLC
ohn.park@rsg-law.com

Edward F. Ruberry
RUBERRY STALMACK GARVEY LLC
ed.ruberry@rsg-law.com

---

[6] "[W]hen a suit is dismissed for want of subject-matter jurisdiction, that is, because the court has no power to resolve the case on the merits even if the parties are content to have it do so, it is error to make the dismissal with prejudice." *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) (citations omitted).